THOMAS E. FRANKOVICH (State Bar No. 074414)
THOMAS E. FRANKOVICH,
***A PROFESSIONAL LAW CORPORATION***
1832-A Capitol Street
Vallejo, CA 94590
Telephone:    (415) 444-5800
Facsimile:    (415) 674-9900
Email:      tfrankovich@disabilitieslaw.com

Attorney for Plaintiff
BYRON CHAPMAN,

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPMAN,<br><br>        Plaintiffs,<br><br>v.<br><br>LA COCINA ECONOMICA; WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA,<br><br>        Defendants. | **CASE NO.**<br>**Civil Rights**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1st CAUSE OF ACTION:** For Denial of Access by a Public Accommodation in Violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101, *et seq.*)<br><br>**2nd CAUSE OF ACTION:** For Denial of Full and Equal Access in Violation of California Civil Code §§54, 54.1 and 54.3<br><br>**3rd CAUSE OF ACTION:** For Denial of Accessible Sanitary Facilities in Violation of California Health & Safety Code §19955, *et seq.*<br><br>**4th CAUSE OF ACTION:** For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of California Civil Code §51, *et seq.* (The Unruh Civil Rights Act)<br><br>**DEMAND FOR JURY** |

Plaintiff BYRON CHAPMAN complains of defendants WARREN NELSON; NANCY NELSON; and defendant CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA and alleges as follows:

**INTRODUCTION:**

1.     This is a civil rights action for discrimination against persons with physical disabilities, of which class plaintiff BYRON CHAPMAN and the disability community are members, including but not limited to 4A4U, for failure to remove architectural barriers structural in nature at defendants' LA COCINA ECONOMICA, a place of public accommodation, thereby discriminatorily denying plaintiff and the class of other similarly situated persons with physical disabilities access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations thereof. Plaintiff seeks injunctive relief and damages pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*; California Civil Code §§51, 51.5 and 54, *et seq.*; and California Health & Safety Code §19955, *et seq.*

2.     Plaintiff BYRON CHAPMAN is a person with physical disabilities who, on or about June 2, 2015, May 7, 2016 and July 5, 2016 (**deterred thereafter**) was an invitee, guest, patron, customer at defendants' LA COCINA ECONOMICA, in the City of Chico, California. At said times and place, defendants failed to provide proper legal access to the taqueria, which is a "public accommodation" and/or a "public facility" including, but not limited to signage, parking, entry, service counter, dining area and unisex restroom.  The denial of access was in violation of both federal and California legal requirements, and plaintiff BYRON CHAPMAN suffered violation of his civil rights to full and equal access, and was embarrassed and humiliated.

**JURISDICTION AND VENUE:**

3.     **Jurisdiction:**   This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, are also brought under

parallel California law, whose goals are closely tied with the ADA, including but not limited to violations of California Civil Code §51, *et seq.* and §54, *et seq.*, California Health & Safety Code §19955 *et seq.*, including §19959; and California Building Code.

4. **Venue:**   Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located at/near 905 Wall Street, in the City of Chico, County of Butte, State of California, and that plaintiff's causes of action arose in this county.

**PARTIES:**

5. Plaintiff  BYRON CHAPMAN is a "physically handicapped person," a "physically disabled person," and a "person with physical disabilities" (hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning, but the legislative scheme in Part 5.5 of the Health & Safety Code uses the term "physically handicapped persons" and the Unruh Civil Rights Act, §§51, 51.5, 54 and 54.1, and other statutory measures refer to protection of the rights of "physically disabled persons").  Plaintiff BYRON CHAPMAN is a "person with physical disabilities," as defined by all applicable California and United States laws. Plaintiff  BYRON CHAPMAN has a spinal cord injury which affects both lower extremities (i.e., right leg has no motor skills but heightened sensitivity and left leg has approximately 15% to 20% motor skills and no sensitivity).  Plaintiff  BYRON CHAPMAN relies primarily on a wheelchair to travel about in public.  Consequently, plaintiff BYRON CHAPMAN is a member of that portion of the public whose rights are protected by the provisions of Health & Safety Code §19955, *et seq.* (entitled "Access to Public Accommodations by Physically Handicapped Persons") and the protections of the Unruh Civil Rights Act, Civil Code §§51 and 51.5 the Disabled Persons Act, Civil Code §54, and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

6. **DEFINITIONS:**

a. **ADAAG** - The Americans with Disabilities Act Accessibility Guidelines of 1990; and 2010 ADA Standards

b.    **2010 ADA STANDARDS** - The revised regulations for Title II and III of the Americans with Disabilities Act of 1990 in the Federal Register as of September 15, 2010;

c.    **ARCHITECTURAL BARRIERS** - Architectural barriers are physical features that limit or prevent people with disabilities from obtaining the goods or services that are offered.  They can include but are not limited to the following examples:  parking spaces that are too narrow to accommodate people who use wheelchairs; a step or steps at the entrance or to part of the selling space of a store; round doorknobs or door hardware that is difficult to grasp; aisles that are too narrow for a person using a wheelchair; electric scooter, or a walker; a high counter or narrow checkout aisles at a cash register, and fixed tables in eating areas that are too low to accommodate a person using a wheelchair or that have fixed seats that prevent a person using a wheelchair from pulling under the table.

Excerpted from the *"ADA Guide for Small Businesses"* with an interlineation modification. http://www.ada.gov/smbustxt.htm.

(The descriptive use of the word "barriers" as used herein is synonymous with architectural barriers).

d.    **ELEMENTS -** An architectural or mechanical component of a building, facility, space, or site (e.g., telephone, curb ramp, door, flush valve, drinking fountain, seating, or water closet, toilet seat, dispensers) and/or placement or lack thereof.

e.    **CATEGORICAL ARCHITECTURAL BARRIERS -** Are elements and facilities which are, or can be architectural barriers standing alone or in combination with one another where the element(s)/facility(s) is/are noncomplying or where the combination thereof creates a category. For

example:  such as a parking lot, entrance, restroom, lobby, guest room, dining area.

f.   **PHYSICAL FEATURES** - Are synonymous with "Elements."

g.   **FACILITY -** All or any portion of buildings, structures, site improvements, complexes, equipment, roads, walks, passageways, parking lots, or other real or personal property located on a site.

h.   **ENTRANCE -** Any access point to a building or portion of a building or facility used for the purpose of entering.  An entrance includes the approach walk, the vertical access leading to the entrance platform, the entrance platform itself, vestibules if provided, the entry door(s) or gate(s), and the hardware of the entry door(s) or gate(s).

i.   **CLEAR FLOOR SPACE -** The minimum unobstructed floor or ground space required to accommodate a single, stationary wheelchair and occupant.

j.   **ACCESSIBLE ROUTE -** A continuous unobstructed path connecting all accessible elements and spaces of a building or facility.  Interior accessible routes may include corridors, floors, ramps, elevators, lifts, and clear floor space at fixtures.  Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts.

k.   **PATH OF TRAVEL -** A continuous path connecting all elements and spaces of a building or facility.

l.   **NON COMPLYING -** Not complying with ADAAG and/or the "Readily Achievable Standard" of 28 CFR §36.304.

7.   Defendants WARREN NELSON; NANCY NELSON and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA are the owners of the real property (land and building) located at or near 905 Wall Street, Chico, California.

8.   Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER

1  DIGIOVANNA, an individual dba LA COCINA ECONOMICA (hereinafter alternatively

2  collectively referred to as "defendants") are the owners and operators, lessors and/or lessees, or

3  agents of the owners, lessors and/or lessees, of the public accommodation known as LA COCINA

4  ECONOMICA, located at/near 905 Wall Street, Chico, California, or of the building and/or

5  buildings which constitute said public accommodation.

6       9.    At all times relevant to this complaint, defendants WARREN NELSON; NANCY

7  NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA

8  own and operate in joint venture the subject LA COCINA ECONOMICA as a public -

9  accommodation.  This business is open to the general public and conducts business therein.  The

10  business is a "public accommodation" or "public facility" subject to the requirements of

11  California Civil Code §§51, 51.5 and 54, *et seq.,* Health and Safety code §19955, *et seq.,* and the

12  ADA, 42 U.S.C. §12101, *et seq.*

13       10.    At all times relevant to this complaint, defendants WARREN NELSON; NANCY

14  NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA

15  are jointly and severally responsible to identify and remove architectural barriers at the subject

16  LA COCINA ECONOMICA pursuant to Code of Federal Regulations title 28, section 36.201(b),

17  which states in pertinent part:

18         **§ 36.201     General**

19         (b) *Landlord and tenant responsibilities.* Both the landlord
       who owns the building that houses a place of public

20         accommodation and the tenant who owns or operates the place of
       public accommodation are public accommodations subject to the

21         requirements of this part.  As between the parties, allocation of
       responsibility for complying with the obligations of this part may be

22         determined by lease or other contract.

23         28 CFR §36.201(b)

24  **PRELIMINARY FACTUAL ALLEGATIONS:**

25       11.    The LA COCINA ECONOMICA, is a restaurant, located at/near 905 Wall Street,

26  Chico, California.  The LA COCINA ECONOMICA, its signage, parking, entry, service counter,

27  dining area and unisex restroom, and its other facilities are each a "place of public

28  accommodation or facility" subject to the barrier removal requirements of the Americans with

Disabilities Act.  On information and belief, each such facility has, since July 1, 1970, undergone "alterations, structural repairs and additions," each of which has subjected the LA COCINA ECONOMICA and each of its facilities, its signage, parking, entry, service counter, dining area and unisex restroom to disability access requirements per the Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the California Building Code.

12.     On or about the year of 1981, defendants' and each of them purchased and/or took possessory control of the premises now known as LA COCINA ECONOMICA.  At all times prior thereto, defendants' and each of them were aware of their obligation prior to the close of escrow, or upon taking possessory interest that public accommodations had a duty to identify and remove architectural barriers and were aware that LA COCINA ECONOMICA was not accessible to the disabled.  Nevertheless, defendants' and each of them, operated the subject restaurant as though it was accessible.

13.     At all times stated herein, defendants' and each of them with the knowledge that each of them had a continuing obligation to identify and remove architectural barriers where it was readily achievable to do so, failed to adopt a transition plan to provide better and/or compliant access to the subject accommodation.

14.     At all times referred to herein and continuing to the present time, defendants, and each of them, advertised, publicized and held out the LA COCINA ECONOMICA as being handicapped accessible and handicapped usable.

15.     On or about December 30, 2013,  Marshall Loskot with his care giver, Yvonne Williams was an invitee and guest at the subject  LA COCINA ECONOMICA, for purposes of having food and beverage.  Marshall Loskot sent notice letters on January 22, 2014 and March 29, 2014, to the landlord and/or tenant about access problems.

16.     At some of the times stated herein, plaintiff  BYRON CHAPMAN was in Chico, for the purposes of  visiting with Brenda Pickern.

17.     On or about June 2, 2015, May 7, 2016 and July 5, 2016, plaintiff  BYRON CHAPMAN was an invitee and guest at the subject LA COCINA ECONOMICA, with his wife Judi Chapman on June 2, 2015 and July 5, 2016 for purpose of having food and beverage.

18.     On or about June 2, 2015, May 7, 2016 and July 5, 2016, plaintiff  BYRON CHAPMAN encountered the following architectural barriers in the parking lot and entrance of LA COCINA ECONOMICA and as a legal result had the following adverse experiences: no disabled parking signage; tow-a-way signage; or van accessible parking; and no marked path of travel from parking lot to the entry door, which had very limited strike side clearance because of a newspaper rack that blocked it.  This resulted in plaintiff  BYRON CHAPMAN parking elsewhere.   The entrance had a newspaper rack partly blocking the strike side which made it somewhat difficult for plaintiff  BYRON CHAPMAN from opening the door.

19.     On or about June 2, 2015 and May 7, 2016 , plaintiff  BYRON CHAPMAN encountered the following architectural barriers in the dining area of  LA COCINA and as a legal result had the following adverse experiences: the service counter was too high for plaintiff BYRON CHAPMAN to reach his food.  There was no table for plaintiff  BYRON CHAPMAN to eat at as none had the nineteen (19) inch depth requirements; this resulted in plaintiff BYRON CHAPMAN to sit sideways and making it difficult to eat.  Further the dining counter was not an alternative possibility as it was too high to eat off of.

20.     On or about June 2, 2015 and May 7, 2016 , plaintiff  BYRON CHAPMAN encountered the following architectural barriers at and in the unisex restroom of LA COCINA and as a legal result had the following adverse experiences: the door to the unisex restroom had a knob and resulted in plaintiff  BYRON CHAPMAN twisting the knob to open the door; the toilet seat cover dispenser was placed behind the toilet making it difficult for plaintiff  BYRON CHAPMAN to reach; the water closet was too close to the wall; the rear grab bar was too short and the side grab bars consisted of two short bars and resulted in plaintiff  BYRON CHAPMAN having to stress and strain in transferring to and from the water closet; the side grab bars were composed of two (2) separate bars making it harder for plaintiff to use; the toilet paper dispenser was placed far forward of the water closet resulting in plaintiff  BYRON CHAPMAN having to stretch and strain in order to use it; after washing his hands, plaintiff  BYRON CHAPMAN could not reach the paper towel as the dispenser was placed too high resulting in plaintiff  BYRON

CHAPMAN drying his hands on his pants.  The door lock mechanism was too small making it difficult for plaintiff  BYRON CHAPMAN to open it.

21.     On or about July 5, 2016  plaintiff  BYRON CHAPMAN in the dining area of La Cocina encountered the following architectural barriers and as a legal result had the following  adverse experiences: No changes had been made in the dining area.  There were no accessible tables, no accessible counter to eat at and no accessible service counters.  As a legal result, plaintiff  BYRON CHAPMAN struggled with the beverage container and because the tables were not accessible he elected to order his food to go.

22.     On July 5, 2016  plaintiff  BYRON CHAPMAN needed to use the restroom but chose not to attempt to use it.  Plaintiff felt that it would be a futile gesture as no remedial work had been done in the dining area which was easier to remedy than the unisex restroom.  One accessible table could have been purchased.

23.     Plaintiff  BYRON CHAPMAN learned that Marshall Loskot on or about January 22, 2014, had written both the landlord and tenant about access issues.  Marshall Loskot wrote:

> "Recently, I went to La Cocina Economica in Chico I must use a wheelchair to get around and had problems with the parking, path of travel, seating, bathroom and etc. I thought the landlord and the tenant should know about this. That's why I wrote this identical letter to both of you so you could get together and properly fix these problems. Some of the simple things could be fix by a handyman at little expenses (get a stencil and paint the parking for example or signs). You need to learn what needs to be done and repair it now. You need to do your own inspection and fix everything that is needed to provide proper access. One place to get information about what needs to be fixed is Pacific ADA and IT in Oakland but there are many more government services of information. I also understand there's a 10,000 dollar tax credit to provide or repair  access. You may wish to talk to your tax man if money is tight. Anyway, please write me when you receive this letter telling me what you plan to repair and when you plan on having it finished. Give me a date so I can plan to have another great meal at your restaurant when everything is properly fix. If you are not the one in charge or have the responsibility to make these repairs, write to tell me and would you make sure that this letter gets to the person in charge of making the necessary repairs and that I am kept informed."

24.    Plaintiff  BYRON CHAPMAN learned that  Marshall Loskot on March 27, 2014 returned to La Cocina.  While there a man approached  Marshall Loskot and asked him in substance: how a wheelchair user would assess the restaurant; he said he was an owner; and Marshall Loskot told him about some of the barriers that needed to be addressed.  The man left and came back with a letter and asked if he, Marshall Loskot, was " Marshall Loskot."  Marshall Loskot replied "yes."  The man said he'd passed the letter along to the landlord, but that the landlord, but that the landlord took a long time to make repairs, such as the roof.  The man and  Marshall Loskot  then had a conversation about seasonings, chiles and al pastor tacos. Marshall Loskot and the owner also discussed that he (the owner) should consider getting a CASP inspection and get information from the Department of Justice ("DOJ"), so that everything could be assessed and properly fixed.

25.    Plaintiff  BYRON CHAPMAN learned on March 29, 2014, Marshall Loskot did a follow-up letter to his March 27, 2014 visit and his earlier letter he had written on January 22, 2014.  Marshall Loskot wrote:

> "After not getting any reply to my original letter I was in Chico and decided to have a lite lunch so came to have a taco at your restaurant and see if any improvement had been made. I was very happy that you introduced yourself as the owner of the business and asked for my input as how you're your restaurant was doing to accommodate your disabled customers. I told you about some of the barriers I had personally experienced that could be repaired but I am not qualified or have the knowledge to identify all of the ADA barriers repairs that may need to be done. You told me that you wanted to repair your business but were having trouble getting the landlord to help and acquiring ADA barrier repair information. You asked about places to get information about what needs to be done to bring your business into compliance with the ADA and California building codes. I decided to help identify with some information sources. So, I did some online research and found couple of places that may have the information you requested: Pacific ADA and IT Center in Oakland at 1-800-949-4232 or the Department of Justice at 1-800-514-0301 and ask them to send you all the information they have on access then you could learn what to look at and what needs to be done (but there are many more). It appears that much of the work could be done by yourself or a handyman. Also, it looked like there may be a $10,000 tax credit for providing access (you may want to talk to your tax man). I found there may be is another way to get the ADA barrier repair information; hire an

ADA or CASP certified consultant to do an inspection and report. These laws were enacted and to be complied with in 1992. One of the sayings in the disabled community is access delayed is access denied. I hope now that we have met that you will keep me informed of what you plan to do, what will be done at your La Cocina Economica. Information and understanding solves problems. So, here are some questions I'd like you to write me with answers when you get this letter.

1.    What is the name of your ADA consultant or how are you going to get the barrier repair information?

2.    When will the inspection take place

3.    When will you send me a copy of the inspection report so that I can determine that all of access problems I encountered will be addressed? Inspectors can sometime make a mistake and don't address everything so it does not hurt to double check.

4.    What date do you think the work will be done by? I hope ninety days to properly repair everything is about right, do you agree?

5.    Would you please give me a list of repairs to be made and date of completion for each repair so that I may come to visit and eat when just the major problems I must overcome are repaired. I do not use some repairs made for the blind that you will be making for example.

6.    Not everything happens as planned, so keep me informed if there are unforeseen delays for a repair and the date the delayed item will be repaired and therefore completed.

As I mentioned I sell organic seasoning blends and could bring some by for you to sample and or give cooking recommendations. I was a chef for many years and would not mind sharing some of this knowledge. We have also made custom seasoning blends for some of our customers using their recipes and our organic herbs."

26.    Plaintiff BYRON CHAPMAN like Marshall Loskot also had personal contact with defendant Christopher Digiovanna. On or about July 5, 2016 plaintiff BYRON CHAPMAN while in La Cocina was approached by defendant Christopher Digiovanna who had a conversation with plaintiff BYRON CHAPMAN. In substance they discussed: some of the architectural barriers; that BYRON CHAPMAN was taking photographs; that he (Christopher Digiovanna) expects to receive a letter from plaintiff BYRON CHAPMAN followed by a lawsuit; that governmental officials gave him mixed messages on his obligations to remove architectural barriers and provide access, and therefore that he would not be removing architectural barriers until building officials tell him exactly what he must do.

27.     Therefore, at said times and place, plaintiff BYRON CHAPMAN , encountered the following architectural barriers as stated herein or lack thereof and/or "elements" and "facilities" which constituted architectural barriers and/or categorical architectural barriers and a denial of the proper and legally-required access to a public accommodation to persons with physical disabilities including, but not limited to:

a.     lack of directional signage to show accessible routes of travel, i.e., entrances;

b.     lack of disabled van accessible parking stall;

c.     lack of disabled parking signage;

d.     lack of tow-a-way signage;

e.     lack of an accessible entrance due to door pressure and a display rack partially blocking strike side clearance;

f.     lack of handicapped accessible service counter;

g.     lack of an accessible dining area; 5% compliance requirement;

h.     lack of a handicapped-accessible unisex public restroom;

i.     lack of signage, policies, procedures and guidelines to ensure the person(s) with disabilities to the maximum extent possible have an opportunity to share in the same goods, services and opportunities as those afforded to able-bodied persons; and

j.     on personal knowledge, information and belief, other public facilities and elements too numerous to list were inaccessible to plaintiff(s) and for use by other persons with physical disabilities similarly situated.

28.     Specific architectural barriers encountered by plaintiff  BYRON CHAPMAN in the unisex restroom herein in addition to categorical architectural barriers stated herein and the respective difficulties experienced by plaintiff as stated herein, the barriers include but are not limited to:

**PARKING**

•     no disabled parking signage;

•     no van accessible parking stall(s);

•     no tow-a-way signage with phone number;

•     non complying van accessible parking stall access aisle(s);

**ENTRANCE**

- inaccessible entrance (due to strike side clearance being partially blocked by newspaper rack);

**DINING**

- service counter too high (approximately 48");
- dining food counter too high at 43";

**UNISEX RESTROOM**:

- noncomplying unisex restroom for the disabled;
- no International Symbol of Accessability (ISA) signage;
- door knobs and latches that require grasping, turning or pinching;
- rear grab bar too short at 24"; two short side grab bars @ 20" and 18" in length;
- flush control of toilet on the narrow side between wall and toilet tank wrong side;
- paper towel dispenser(s) too high with point of operation at 48" or not properly placed interferes with side grab bar;
- toilet paper dispenser at incorrect placement too far from water closet, 13½" in front of the water closet;
- toilet seat dispenser too high @ 52" or not usable placed behind the toilet;
- toilet centerline 12" from the side wall.

Therefore, as a legal result of encountering each of said elements, plaintiff experienced one, all, or a combination of the following difficulties: stress, strain, difficulty, and discomfort to his upper extremities in attempting to and/or using said elements also causing anxiety, disappointment, and embarrassment.

29.     At all times as stated herein, plaintiff  BYRON CHAPMAN encountered architectural barrier(s) as stated herein and/or had personal knowledge of said barrier(s) and knew it would be a futile gesture to attempt to overcome it/them because of his disability.

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

30.     At all times stated herein, it was "readily achievable" for defendants to remove some and/or all of the architectural barriers complained of over a reasonable period of time from the date that defendants initially took possession to meet the affirmative duty to identify and remove architectural barriers where it is readily achievable to do so.  In that regard, defendants could have but did not avail themselves of the tax deduction and tax credits provided by  Internal Revenue Services ("IRS") codes 44 and 190, which apply to the costs of barrier removal.

31.     At all times and place, each architectural element as stated herein that did not strictly comply with or substantially comply with the ADAAG minimum requirements constituted an architectural barrier which precluded plaintiff BYRON CHAPMAN from full and equal opportunities afforded to non disabled persons to the goods and services of  LA COCINA ECONOMICA.

32.     Plaintiff  BYRON CHAPMAN was and is deterred from returning to  LA COCINA ECONOMICA so long as architectural barrier(s) complained of that he encountered, as stated herein are not ADAAG compliant.

33.     At said times and place, when plaintiff  BYRON CHAPMAN encountered the architectural barriers as stated herein, plaintiff BYRON CHAPMAN in seeing a barrier(s) and/or attempting to overcome the barriers to gain access experienced any one or combination of physical difficulty, discomfort, embarrassment, stress, strain, fatigue, anger, annoyance and disappointment.  This arose from plaintiff's physical inability to effectively use his/her upper extremities to easily overcome the architectural barriers as stated herein. This constitutes a denial of full and equal access to the subject public accommodation and a denial of the opportunity to independently enjoy and participate in the opportunities, goods and services offered to non disabled persons and patrons, invitees and guests.

34.     Said architectural barrier(s) as stated herein deprived and deterred plaintiff BYRON CHAPMAN the same full and equal access that a non wheelchair user/non disabled person would enjoy while engaging in the goods, service and opportunities offered at the subject LA COCINA ECONOMICA.

//

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

35.     At all times stated herein, the existence of architectural barriers at defendants' place of public accommodation evidenced "actual notice" of defendants' intent not to comply with the Americans with Disabilities Act of 1990 either then, now or in the future.

36.     At all times stated herein, defendants, and each of them, did not act as reasonable and prudent landlord/tenant and were "negligent per se" or at a minimum negligent for not removing architectural barriers that would foreseeably prevent plaintiff BYRON CHAPMAN from receiving the same goods and services as able bodied people and some of which may and did pose a threat of harm and/or personal injury to people with disabilities. Therefore, as a legal result of defendants breach of duty to remove those barriers encountered by plaintiff, plaintiff suffered bodily injury in the general form of stress, strain, pain, and fatigue either individually or in combination of one or more.

37.     As a legal result of defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA's failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to plaintiff and other persons with disabilities, plaintiff suffered the damages as alleged herein.

38.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to his rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*.

39.     Defendants', and each of their, failure to remove the architectural barriers complained of herein created, at the time of plaintiff BYRON CHAPMAN's first visit to said public accommodation, and continues to create continuous and repeated exposure to substantially the same general harmful conditions which caused plaintiff BYRON CHAPMAN harm as stated herein.

40.     Plaintiff BYRON CHAPMAN was denied his rights to equal access to a public facility by defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA, because defendants WARREN

NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA maintained a taqueria without access for persons with physical disabilities to its facilities, including but not limited to the signage, parking, entry, service counter, dining area and unisex restroom, and other public areas as stated herein, and continue to the date of filing this complaint to deny equal access to each plaintiff and other persons with physical disabilities in these and other ways.

41.     Construction alterations, if any, carried out by defendants have also triggered access requirements under both California law and the Americans with Disabilities Act of 1990.

42.     Defendants may have intentionally undertaken to modify and alter existing building(s), and may have failed to make them comply with accessibility requirements under the requirements of ADAAG and California Building Code.

43.     Defendants have been negligent in their affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

44.     Because of defendants' violations, plaintiff and other persons with physical disabilities are unable to use public facilities such as those owned and operated by defendants on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act of 1990, Civil Code §51, Civil Code §54.1 and Health & Safety Code §19955, *et seq.* and other accessibility law as pled herein.  Plaintiff  BYRON CHAPMAN seeks an order from this court compelling defendants to make the LA COCINA ECONOMICA accessible to persons with disabilities.

45.     Plaintiff  BYRON CHAPMAN, as described hereinbelow, seeks injunctive relief to require the  LA COCINA ECONOMICA  to be made accessible to meet the requirements of both California law and the Americans with Disabilities Act of 1990, whichever is more restrictive, so long as defendants operate the  LA COCINA ECONOMICA as a public facility.

46.     Plaintiff believes that even with service of the summons and complaint on defendant(s) and each of them, that defendant(s) will not , under their "continuing obligation" immediately undertake remedial action to identify and remove architectural barriers.

47.   Plaintiff  BYRON CHAPMAN seeks damages for violation of his civil

rights on June 2, 2015,  May 7, 2016 and July 5, 2016, and **deterrence occasion(s).**  Plaintiff

seeks statutory damages of not less than $4,000, pursuant to Civil Code §52(a) or alternatively

$1000 pursuant to Civil Code §54.3, for each day after his visit that the trier of fact (court/jury)

determines was the date that some or all remedial work should have been completed under the

standard that the landlord and tenant had an ongoing duty to identify and remove architectural

barriers where it was readily achievable to do so, which deterred plaintiff  BYRON CHAPMAN

from returning to the subject public accommodation because of his knowledge and/or belief that

neither some or all architectural barriers had been removed and that said premises remains

inaccessible to persons with disabilities whether a wheelchair user or otherwise.  The acts and

omission of defendants, and each of them, in failing to provide the required accessible public

facilities at the time of plaintiff's visit and injuries, indicate actual and implied malice toward

plaintiff, and despicable conduct carried out by defendants, and each of them, with a willful and

conscious disregard for the rights and safety of plaintiff and other similarly situated persons, and

justify a trebling of damages as provided by Civil Code §§52(a) and 54.3, in order to make a more

profound example of defendants, and each of them, to other operators and landlords of other

restaurants and other public facilities, and to punish defendants and to carry out the purposes of

the Civil Code §§ 51, 51.5 and 54.

48.   Plaintiff is informed and believes and therefore alleges that defendants WARREN

NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA

COCINA ECONOMICA, and each of them, caused the subject building(s) which constitute the

LA COCINA ECONOMICA to be constructed, altered and maintained in such a manner that

persons with physical disabilities were denied full and equal access to, within and throughout said

building(s) of the  LA COCINA ECONOMICA  and were denied full and equal use of said public

facilities.  Furthermore, on information and belief, defendants have continued to maintain and

operate said taqueria  and/or its building(s) in such conditions up to the present time, despite

actual and constructive notice to such defendants that the configuration of  LA COCINA

ECONOMICA and/or its building(s) is in violation of the civil rights of persons with physical

disabilities, such as plaintiff  BYRON CHAPMAN, and other members of the disability

community.  Such construction, modification, ownership, operation, maintenance and practices of

such public facilities are in violation of Civil Code §§51, 51.5 and 54, Health and Safety Code

§19955, and the ADA, 42 U.S.C. §12101, *et seq.*

49.    Defendants' actual and constructive notice that the physical configuration of the

facilities including, but not limited to, architectural barriers constituting the LA COCINA

ECONOMICA  and/or building(s) was in violation of the civil rights of persons with physical

disabilities, such as plaintiff, includes, but is not limited to, coming into contact with public

accommodations with accessible elements and facilities since January 26, 1991, communications

with invitees and guests, Marshall Loskot and plaintiff  BYRON CHAPMAN himself, possibly

sponsors of conferences, owners of other restaurants, hotels, motels and businesses, notices they

obtained from governmental agencies upon modification, improvement, or substantial repair of

the subject premises and other properties owned by these defendants, newspaper articles and trade

publications regarding the Americans with Disabilities Act of 1990 and other access laws, public

service announcements by former U.S. Attorney General Janet Reno between 1993 and 2000, and

other similar information. Defendants' failure, under state and federal law, to make the LA

COCINA ECONOMICA accessible is further evidence of defendants' conscious disregard for the

rights of plaintiff and other similarly situated persons with disabilities.  Despite being informed of

such effect on plaintiff and other persons with physical disabilities due to the lack of accessible

facilities, defendants, and each of them, knowingly and willfully refused to take any steps to

rectify the situation and to provide full and equal access for plaintiff and other persons with

physical disabilities to the  LA COCINA ECONOMICA.  Said defendants, and each of them,

have continued such practices, in conscious disregard for the rights of plaintiff and other persons

with physical disabilities, up to the date of filing of this complaint, and continuing thereon.

Defendants had further actual knowledge of the architectural barriers referred to herein by virtue

of the demand letter addressed to the defendants and served concurrently with the summons and

complaint.  Said conduct, with knowledge of the effect it was and is having on plaintiff and other

persons with physical disabilities, constitutes despicable conduct in conscious disregard of the

rights and safety of plaintiff and of other similarly situated persons, justifying the imposition of treble damages per Civil Code §§52 and 54.3.

50.     Plaintiff  BYRON CHAPMAN and the disability community, consisting of persons with disabilities, would, could and will return to the subject public accommodation when it is made accessible to persons with disabilities.

**I.      FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq.*)**
(On behalf of Plaintiff BYRON CHAPMAN and Against Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA, inclusive)
(42 U.S.C. §12101, *et seq.*)

51.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 50 of this complaint.

52.     Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C. §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect:

> some 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that] such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.

53.     Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the

major areas of discrimination faced day to day by people with disabilities.

54.     As part of the Americans with Disabilities Act of 1990, Public Law 101-336 (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (Section 301 42 U.S.C. §12181, *et seq.*).  Among the public accommodations identified for purposes of this title was:

> (7)     PUBLIC ACCOMMODATION - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce -

> (B) a restaurant, bar or other establishment serving food or drink.

> 42 U.S.C. §12181(7)(B)

55.     Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

56.     The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

> (I)     the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

> (ii)     a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

> (iii)     a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

1

2

3

4

5

6

   (iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

   (v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

7 The acts of defendants set forth herein were a violation of plaintiff's rights under the ADA, Public

8 Law 101-336, and the regulations promulgated thereunder, 28 CFR Part 36, *et seq.* - Effective

9 January 31, 1993, the standards of the ADA were also incorporated into California Civil Code

10 §51, making available the damage remedies incorporated into Civil Code §51 and 52(a) and 54.3.

11   57. The removal of the barriers complained of by plaintiff as hereinabove alleged were

12 at all times after January 26, 1992 "readily achievable" as to the subject building(s) of LA

13 COCINA ECONOMICA pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv).  On information and

14 belief, if the removal of all the barriers complained of herein together was not "readily

15 achievable," the removal of each individual barrier complained of herein was "readily

16 achievable."  On information and belief, defendants' failure to remove said barriers was likewise

17 due to discriminatory practices, procedures and eligibility criteria, as defined by 42 U.S.C.

18 §12182 (b)(2)(A)(i)and (ii).

19   58. Per 42 U.S.C. §12181 (9), the term "readily achievable" means "easily

20 accomplishable and able to be carried out without much difficulty or expense."  The statute

21 defines relative "expense" in part in relation to the total financial resources of the entities

22 involved.  Plaintiff alleges that properly repairing, modifying, or altering each of the items that

23 plaintiff complains of herein were and are "readily achievable" by the defendants under the

24 standards set forth under §301(9) of the Americans with Disabilities Act.  Furthermore, if it was

25 not "readily achievable" for defendants to remove each of such barriers, defendants have failed to

26 make the required services available through alternative methods which were readily achievable.

27   59. On information and belief, construction work on, and modifications of, the subject

28 building(s) of LA COCINA ECONOMICA occurred after the compliance date for the Americans

1  with Disabilities Act, January 26, 1992, independently triggering access requirements under Title
2  III of the ADA.

3        60.     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et*
4  *seq.*, plaintiff is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights
5  Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis
6  of disability in violation of this title or have reasonable grounds for believing that plaintiff is
7  about to be subjected to discrimination in violation of §302.  Plaintiff is deterred from returning to
8  or making use of the public facilities complained of herein so long as the premises and
9  defendants' policies bar full and equal use by persons with physical disabilities.

10        61.     42 U.S.C. 12188 (a)(1) states: "Nothing in this section shall require a person with a
11  disability to engage in a futile gesture if such person has actual notice that a person or
12  organization covered by this title does not intend to comply with its provisions."  Pursuant to this
13  section, plaintiff  BYRON CHAPMAN has not returned to defendants' premises since on or about
14  July 5, 2016, but on information and belief, alleges that defendants have continued to violate the
15  law and deny the rights of plaintiff and of other persons with physical disabilities to access this
16  public accommodation.  Pursuant to 42 USC §12188(a)(2), "In cases of violations of
17  §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such
18  facilities readily accessible to and usable by individuals with disabilities to the extent required by
19  this title."

20        62.     Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights
21  Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement
22  the Americans with Disabilities Act of 1990, including but not limited to an order granting
23  injunctive relief and attorneys' fees.  Plaintiff will seek attorneys' fees conditioned upon being
24  deemed to be the prevailing party.

25  **II.    SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS
         IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, ET SEQ.**
26        (On Behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants WARREN
         NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba
27        LA COCINA ECONOMICA, inclusive)
         (California Civil Code §§54, 54.1, 54.3, *et seq.)*
28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

63.    Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 62 of this complaint.

64.    At all times relevant to this action, California Civil Code §54 has provided that persons with physical disabilities are not to be discriminated against because of physical handicap or disability.  This section provides that:

> (a) Individuals with disabilities . . . have the same rights as the general public to full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, and other public places.

65.    California Civil Code §54.1 provides that persons with disabilities shall not be denied full and equal access to places of public accommodation or facilities:

> (a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Civil Code §54.1(a)(1)

66.    California Civil Code §54.1 further provides that a violation of the Americans with Disabilities Act of 1990 constitutes a violation of section 54.1:

> (d) A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act.

Civil Code §54.1(d)

67.    Plaintiff BYRON CHAPMAN is a person within the meaning of Civil Code §54.1 whose rights have been infringed upon and violated by the defendants, and each of them, as prescribed by Civil Code §§54 and 54.1.  Each specific architectural barrier which defendants

knowingly and willfully fail and refuse to remove constitutes a separate act in violation of Civil Code §§54 and 54.1.  Plaintiff has been and continue to be denied full and equal access to defendants' LA COCINA ECONOMICA.  As a legal result, plaintiff is entitled to seek damages pursuant to a court or jury determination, in accordance with California Civil Code §54.3(a) for each day on which he visited or have been deterred from visiting the LA COCINA ECONOMICA because of his knowledge and belief that the LA COCINA ECONOMICA is inaccessible to persons with disabilities.  California Civil Code §54.3(a) provides:

> Any person or persons, firm or corporation, who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than . . .one thousand dollars ($1,000) and . . . attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1 and 54.2.

Civil Code §54.3(a)

68.    On or about June 2, 2015,  May 7, 2016 and July 5, 2016, and **deterrence occasion(s)** plaintiff  BYRON CHAPMAN suffered violations of Civil Code §§54 and 54.1 in that plaintiff BYRON CHAPMAN was denied access to signage, parking, entry, service counter, dining area and unisex restroom and other public facilities as stated herein at the LA COCINA ECONOMICA and on the basis that plaintiff  BYRON CHAPMAN was a person with physical disabilities.

69.    As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff  BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to his rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*.

70.    Further, plaintiff BYRON CHAPMAN suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expected and naturally

associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court.  No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences.

No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

71.     Plaintiff has been damaged by defendants', and each of their, wrongful conduct and seeks the relief that is afforded by Civil Code §§54 and 54.1, 54.3 for violation of plaintiff's rights as a person or an entity that represents persons with physical disabilities on or about June 2, 2015,  May 7, 2016 and July 5, 2016 and **deterrence occasion(s)**, and on a continuing basis since then, including statutory damages, a trebling of all of actual damages, general and special damages available pursuant to §54.3 of the Civil Code according to proof.

72.     As a result of defendants', and each of their, acts and omissions in this regard, plaintiff has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's rights and enforce the provisions of the law protecting access for persons with physical disabilities and prohibiting discrimination against persons with physical disabilities.  Pursuant to the provisions of Civil Code §54.3, plaintiff therefore will seek recovery in this lawsuit for all reasonable attorneys' fees and costs incurred if deemed the prevailing party.  Additionally, plaintiff's lawsuit is intended not only to obtain compensation for damages to plaintiff, but also to compel the defendants to make their facilities accessible to all members of the public with disabilities, justifying public interest attorneys' fees, if deemed the prevailing party, pursuant to the provisions of §1021.5 of the Code of Civil Procedure.

**III.    THIRD CAUSE OF ACTION FOR DENIAL OF ACCESSIBLE SANITARY FACILITIES IN VIOLATION OF HEALTH & SAFETY CODE §19955, *ET. SEQ.*.**
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA, inclusive)
(Health & Safety Code §19955, *et seq.*)

1  73.  Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

2  the allegations contained in paragraphs 1 through 72 of this complaint.

3  74.  Health & Safety Code §19955 provides in pertinent part:

The purpose of this part is to insure that public accommodations or
facilities constructed in this state with private funds adhere to the
provisions of Chapter 7 (commencing with Sec. 4450) of Division 5
of Title 1 of the Government Code.  For the purposes of this part
"public accommodation or facilities" means a building, structure,
facility, complex, or improved area which is used by the general
public and shall include auditoriums, hospitals, theaters, restaurants,
hotels, motels, stadiums, and convention centers.  When sanitary
facilities are made available for the public, clients or employees in
such accommodations or facilities, they shall be made available for
the handicapped.

10  75.  Health & Safety Code §19956, which appears in the same chapter as §19955,

11  provides in pertinent part, "accommodations constructed in this state shall conform to the

12  provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government

13  Code . . . ."  Health & Safety Code §19956 was operative July 1, 1970, and is applicable to all

14  public accommodations constructed or altered after that date.  On information and belief, portions

15  of the LA COCINA ECONOMICA and/or of the building(s) were constructed and/or altered after

16  July 1, 1970, and substantial portions of the LA COCINA ECONOMICA and/or the building(s)

17  had alterations, structural repairs, and/or additions made to such public accommodations after

18  July 1, 1970, thereby requiring said restaurant and/or building to be subject to the requirements of

19  Part 5.5, §19955, *et seq.*, of the Health & Safety Code upon such alteration, structural repairs or

20  additions per Health & Safety Code §19959.

21  76.  Pursuant to the authority delegated by Government Code §4450, *et seq*, the State

22  Architect promulgated regulations for the enforcement of these provisions.  Effective July 1,

23  1982, Title 24 of the California Building Standards Code adopted the California State Architect's

24  Regulations and these regulations must be complied with as to any alterations and/or

25  modifications of LA COCINA ECONOMICA and/or the building(s) occurring after that date.

26  Construction changes occurring prior to this date but after July 1, 1970 triggered access

27  requirements pursuant to the "ASA" requirements, the American Standards Association

28  Specifications, A117.1-1961.  On information and belief, at the time of the construction and

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1  modification of said building, all buildings and facilities covered were required to conform to

2  each of the standards and specifications described in the American Standards Association

3  Specifications and/or those contained in the California Building Code.

4      77.    Restaurants such as the LA COCINA ECONOMICA "public accommodations or

5  facilities" within the meaning of Health & Safety Code §19955, *et seq*.

6      78.    As a result of the actions and failure to act of defendants, and as a result of the

7  failure to provide proper and legally handicapped-accessible public facilities, plaintiff was denied

8  plaintiff's rights to full and equal access to public facilities and suffered a loss of plaintiff's civil

9  rights and plaintiff's rights as a person with physical disabilities to full and equal access to public

10  facilities.

11      79.    Attorneys' Fees -- As a result of defendants' acts and omissions in this regard,

12  plaintiff has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's

13  civil rights and enforce provisions of the law protecting access for the persons with physical

14  disabilities and prohibiting discrimination against the persons with physical disabilities, and to

15  take such action both in plaintiff's own interests and in order to enforce an important right

16  affecting the public interest.  Plaintiff, therefore, seeks in this lawsuit the recovery of all

17  reasonable attorneys' fees incurred, pursuant to the provisions of the Code of Civil Procedure

18  §1021.5.  Plaintiff additionally seeks attorneys' fees pursuant to Health & Safety Code §19953

19  and Civil Code §§54.3 and/or in the alternative, plaintiff will seek attorneys' fees, costs and

20  litigation expenses pursuant to §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 200(a)-3(a)).

21  Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

22      80.    Plaintiff seeks injunctive relief for an order compelling defendants, and each of

23  them, to make the subject place of public accommodation readily accessible to and usable by

24  persons with disabilities.

25  **IV.    FOURTH CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET***

26  ***SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**

27  (On Behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba

28  LA COCINA ECONOMICA, inclusive)

1    (Civil Code §51, 51.5)

2    81.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

3    the allegations contained in paragraphs 1 through 80 of this complaint.

4    82.    Defendants' actions and omissions and failure to act as a reasonable and prudent

5    public accommodation in identifying, removing and/or creating architectural barriers, policies,

6    practices and/or procedures violates §51 of the Civil Code, the Unruh Civil Rights Act.  The

7    Unruh Act provides:

8    > This section shall be known, and may be cited, as the Unruh
> Civil Rights Act.

9

10   > All persons within the jurisdiction of this state are free and
> equal, and no matter what their sex, race, color, religion, ancestry,
> national origin, or **disability** are entitled to the full and equal

11   > accommodations, advantages, facilities, privileges, or services in all
> business establishments of every kind whatsoever.

12

13   > This section shall not be construed to confer any right or
> privilege on a person that is conditioned or limited by law or that is
> applicable alike to persons of every sex, color, race, religion,

14   > ancestry, national origin, or **disability.**

15   > Nothing in this section shall be construed to require any
> construction, alteration, repair, structural or otherwise, or

16   > modification of any sort whatsoever, beyond that construction,
> alteration, repair, or modification that is otherwise required by other

17   > provisions of law, to any new or existing establishment, facility,
> building, improvement, or any other structure . . . nor shall anything

18   > in this section be construed to augment, restrict, or alter in any way
> the authority of the State Architect to require construction,

19   > alteration, repair, or modifications that the State Architect otherwise
> possesses pursuant to other . . . laws.

20

21   > A violation of the right of any individual under the
> Americans with Disabilities Act of 1990 (Public Law 101-336)
> shall also constitute a violation of this section.

22

23   As the Unruh Act incorporates violations of the Americans with Disabilities Act of 1990, the

24   "intent" of the defendants in not complying with barrier removal is not an issue.  Hence, the

25   failure on the parts of defendants, as reasonable and prudent public accommodations, in acting or

26   failing to act to identify and remove barriers can be construed as a "negligent per se" act of

27   defendants, and each of them.

28   //

83.    The acts and omissions of defendants stated herein are discriminatory in nature and in violation of Civil Code §51.5:

> No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or **disability** of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.

> As used in this section, "person" includes any person, firm association, organization, partnership, business trust, corporation, limited liability company, or company.

> Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure . . . nor shall anything in this section be construed to augment, restrict or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

84.    Defendants' acts and omissions as specified have denied to the plaintiff full and equal accommodations, advantages, facilities, privileges and services in a business establishment, on the basis of physical disability, in violation of Civil Code §§51 and 51.5, the Unruh Civil Rights Act.  Furthermore, pursuant to the 1992 amendment to California Civil Code §51, "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."  Plaintiff accordingly incorporates the entirety of his/her above cause of action for violation of the Americans with Disabilities Act at ¶51, *et seq*., as if repled herein.

85.    As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff  BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to his rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*.

//

//

86.     Further, plaintiff  BYRON CHAPMAN suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expectedly and naturally associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his/her damages as prayed hereinafter in an amount within the jurisdiction of this court. No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences.

 No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

87.     Plaintiff BYRON CHAPMAN is entitled to the rights and remedies of §52(a) of the Civil Code, including trebling of actual damages (defined by §52(h) of the Civil Code to mean "special and general damages"), as well as to reasonable attorneys' fees and costs, as is allowed by statute, according to proof if deemed to be the prevailing party.

**PRAYER:**

Plaintiff prays that this court award damages and provide relief as follows:

**I.      PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, *et seq.*)**
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA, inclusive)
(42 U.S.C. §12101, *et seq.*)

1.     For injunctive relief, compelling defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA, inclusive, to make the LA COCINA ECONOMICA, located at 905 Wall Street, Chico, California, readily accessible to and usable by individuals with disabilities, per 42 U.S.C §12181, *et seq*., and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1        2.      For attorneys' fees, litigation expenses and costs of suit, if each plaintiff is

2  deemed the prevailing party; and

3        3.      For such other and further relief as the court may deem proper.

4  **II.     PRAYER FOR SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, *ET SEQ*.**

5  (On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA, inclusive)

7  (California Civil Code §§54, 54.1, 54.3, *et seq.*)

8        1.      For injunctive relief, compelling defendants WARREN NELSON; NANCY

9  NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA

10  ECONOMICA, inclusive, to make the LA COCINA ECONOMICA, located at 905 Wall

11  Street, Chico, California, readily accessible to and usable by individuals with disabilities, per

12  state law.

13        2.      Statutory damages as afforded by Civil Code §54.3 for the date of incident and

14  for each occasion on which each plaintiff was deterred from returning to the subject public

15  accommodation.

16        3.      Attorneys' fees pursuant to Civil Code §54.3 and Code of Civil Procedure

17  §1021.5, if plaintiffs are deemed the prevailing party;

18        4.      Treble damages pursuant to Civil Code §54.3;

19        5.      General damages according to proof;

20        6.      For all costs of suit;

21        7.      Prejudgment interest pursuant to Civil Code §3291; and

22        8.      Such other and further relief as the court may deem just and proper.

23  **III.    PRAYER FOR THIRD CAUSE OF ACTION FOR DENIAL OF ACCESSIBLE SANITARY FACILITIES IN VIOLATION OF HEALTH & SAFETY CODE §19955, *ET. SEQ*.**

24  (On Behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER  DIGIOVANNA, an individual dba LA COCINA ECONOMICA, inclusive)

26  (Health & Safety code §19955, *et seq.*)

27        1.      For injunctive relief, compelling defendants WARREN NELSON; NANCY

28  NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA

ECONOMICA, inclusive, to make the LA COCINA ECONOMICA, located at 905 Wall Street, Chico, California, readily accessible to and usable by individuals with disabilities, per state law.

2.       For attorneys' fees pursuant to Code of Civil Procedure §1021.5, and/or, alternatively, Health & Safety Code §19953, if each plaintiff is deemed the prevailing party;

3.       For all costs of suit;

4.       For prejudgment interest pursuant to Civil Code §3291;

5.       Such other and further relief as the court may deem just and proper.

**IV.    PRAYER FOR FOURTH CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants WARREN NELSON; NANCY NELSON; and CHRISTOPHER DIGIOVANNA, an individual dba LA COCINA ECONOMICA, inclusive)
(California Civil Code §§51, 51.5, *et seq.*)

1.       All statutory damages as afforded by Civil Code §52(a) for the date of incident and for each occasion on which each plaintiff was deterred from returning to the subject public accommodation;

2.       Attorneys' fees pursuant to Civil Code §52(a), if each plaintiff is deemed the prevailing party;

3.       General damages according to proof;

4.       Treble damages pursuant to Civil Code §52(a);

5.       For all costs of suit;

6.       Prejudgment interest pursuant to Civil Code §3291; and

7.       Such other and further relief as the court may deem just and proper.

Dated: August 22, 2016                THOMAS E. FRANKOVICH,
*A PROFESSIONAL LAW CORPORATION*

By: /s/Thomas E. Frankovich
Thomas E. Frankovich
Attorney for Plaintiff  BYRON CHAPMAN

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

3

Dated: August 22, 2016                THOMAS E. FRANKOVICH,
4                                                  *A PROFESSIONAL LAW CORPORATION*

5

6                                                  By: /s/Thomas E. Frankovich

Thomas E. Frankovich
7                                                  Attorney for Plaintiff BYRON CHAPMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**